We're here today on the construction of the settlement agreement contract with the Shah v. United States. Anil Diamondsong said, except for the names and a few other changes, the story's the same one. That happens to be the case with the Shah case and the Massey case. In Massey, I will refer to Massey 1, the interpretation of the contract to Massey 2, which was the follow-up appeal dealing in principle with the payment of damages that arose from that. I also have one, just one small correction I noted in reading. In my statutes, I cited 32 CFR 536.63, excuse me, 0.53. It's technically 0.63. Well, this is different from Massey, right? There were guarantees in Massey, and here the guarantees were only for 20 years, which have expired. There were guarantees in both. There was a guarantee for 40 years in Massey as well to part of it, but part of it was a guarantee that would be paid later on on some of the lump sums. The fact is, the use of the term guarantee is in both of them, as opposed to the Nutt case. And I will say that... It's not true. No, it's not true. It's true in the Massey case that the word guarantee is used with respect to some of the payments, but that it is not true that the word guarantee is used with respect to other payments. Okay. My argument on the guarantee theory is I think we're getting lost in the idea of guarantee anyway in these cases and analysis. It's not the standard third party guarantee where you're not a party to an act and you agree somebody to guarantee somebody else's performance. Guarantee was referred to when you deal with insurance or particularly with the guarantee is for a specified period of time, meaning nothing more than should the child, such as the Massey child, or in my case the Schott child, die before that prescriptive period has expired, those payments will continue, and then they won't be guaranteed after that point in time. But you know, that's really no different. There's other language in here which cuts against you. If you look at page 47 of the appendix, in paragraph 6, it says the annuities purchased by the United States shall make the following payments. It doesn't say that the United States will make the payments. It says that the annuities will make the payments. And then in Massey, there is language in a couple places that talks about distribution being made on behalf of the United States, which suggests perhaps that the United States remained liable if the payments weren't made, and that on behalf of language does not appear here in the agreement. I would argue that the on behalf language, which is in Massey in one part, but in most of the parts where they refer to the shall or the will do things are referring to the annuity. But really all of these are guarantees in the sense that if you're paying something for life, first of all, it's on behalf of the government in any situation, because they're the only party to the lawsuit that we sued. The insurance company, the annuity company is not. And secondly, you would say that if it shall pay you for your life, that's really a guarantee too, if you really think of it. You're guaranteeing that you're going to receive those 20 years as a prescriptive period, that it will continue. This guarantee is these payments will continue for that life period, and then it will cease just as 20 years. Question is, who's liable? It definitely boils down to that. And I would say when you look at all of the similarity in the language in Massey settlement agreement, and in Shaw, that I think you have to come to a conclusion that they are very close and very similar, though there is a little bit of difference in language. And in fact, as I barked... Please address for me why the difference in language that I've pointed out to you isn't significant. That here we have this statement, the annuities purchased by the United States shall make the following payments. Not the United States, but the annuity shall make the payments. And whereas in Massey, the language is that these payments will be made on behalf of the United States. Massey refers to that in place, but Massey also talks about, I believe language in Massey also is that the annuities will make certain payments as well, not just the government or on behalf of the government. I think that is referenced in one place, but I believe... Under background in Massey 1, it's talking about the agreement states that the annuity will result in distributions on behalf of the United States. That's talking about the annuity. And the monthly payments shall be paid, guaranteed. So everything is on behalf of the government, be it in Massey, because it's said on behalf of the government, but also in our case, because they are the only defendant. And that is my answer, I think, to your question, that everything is on behalf of the United States. And I would say that when you talk about the government trying  to scrap their argument that all they agreed to do was to buy an annuity, that's the argument they've been making that Massey really contradicted and just refused to buy. Because even our language is the government will purchase annuity, but it's qualified. The government will purchase an annuity. That will do some things. Not just the government will purchase an annuity that might pay your clients some money down the road, that may or may not continue to do it. Or that the government will just pay you an annuity, buy you an annuity, period, with no... If the government wanted to limit its liability to purchasing an annuity that would make certain payments, what language would it use? The government could have said, number one, that it is not responsible for the failure of the annuity company. Well, so that's a different question, though. That's whether you have to put in a specific waiver of liability or things like that. Affirmatively, if all the government wants us to agree to is, we will purchase an annuity for you that will make these payments over a certain schedule, how would it do that without making itself liable for guaranteeing the payments? Is your view the only way is to put in a specific non-liability clause? Yes, I think so. And the government... Why? Because why isn't language that says the government agrees to purchase an annuity just that? That's their agreement. Their agreement is not to guarantee that annuity. Why shouldn't the argument actually be that in order to have a guarantee, you have to point to specific language showing that the government guarantees the annuity? I would agree that you do have to if you are talking about guarantee. Massey is talking about a primary liability, not a guarantee situation, as I indicated. The language used in Massey, as in ours, creates in the government a primary liability as the only defendant for ensuring that those payments are made. And Massey, too... Can we just stop talking about Massey? I'm hypothetically trying to ask, how would the government, if they just want to agree, the bargain is you come in, you sue them, they say, to resolve this, we're going to purchase you an annuity that makes these payments. That's all we agree to do is to purchase the annuity. How would that be written? Wouldn't it just say the government agrees to purchase an annuity? No, I think under the circumstances, if they said we agree to purchase an annuity that will perform or that will do certain things, I think they're bound by that. They could say we'll do that, but they could go further. They did purchase an annuity that was supposed to do that. What happened is it failed. And so now you're coming back to them and saying you implicitly have to, because of that language, have to serve as a backup and make those payments. Because the agreement said that those payments shall be made, not that they might be made. That the annuity shall make the payments. Not that the government shall make the payments, that the annuity shall make the payments. No, but that's what the government is... You're reading in an implicit requirement that the government is guaranteeing those payments. As much as you want to run away from the notion that you're requiring a guarantee, that's exactly what you're trying to do. They bought an annuity that, when it was bought, was required to make these payments. There's no question that they funded it properly. You agree that they fulfilled all the bargain on that point. So in order to do something, you have to either find that the government implicitly agreed that it would cause those payments to be made in the event the annuity failed, or that it somehow guaranteed it. In Massey, we found, based upon specific language on behalf of the United States, that there was such a requirement. You don't have that language here, do you? You're now asking us to infer something that we found plain in Massey. Well, I beg to differ that we are not, because I think that everything that occurs in this is on behalf of the government, whether it says that or not. You can ask counsel, but I know in the case argued a couple weeks ago in Hendrickson before this Court, Judge O'Malley asked counsel about, gee, how do we resolve this? Because there are four other cases coming up through the system here. Why don't we stick to this case? Okay. But the point is the government could have put language in there that says, if there's a failure, we are not going to be responsible for it. We are just playing it. You could have put in language that said, if there is a failure, the government is responsible for it. Well, you know. I mean, it sounds like you're asking us to infer something one way. The government wants us to infer something the other way. All we can do is look at the plain language, and it doesn't speak to this either way. Well, there are some things about plain language. The contract law is we're looking at what would an intelligently reasonable person do under the prevailing circumstances at the time. And at the time of the settlement, you've got a young couple with a profoundly disabled infant that's going to need care for the rest of its life. And you have something that's not in our case that was in Massey, was Massey at least said, you shall have a AAA-rated annuity contract. Ours is totally silent as to anything. And the inference being from that is that if we care. Were they represented by counsel? They were. But the inference being that if they thought that the government wasn't ultimately responsible should something happen to these, they would have required, like in maybe Massey, and you'll see in some of these other cases, that there is requirements that they have a high-quality-rated bond annuity. And the government has argued in all of these cases, not always successfully, that, gee, if we really thought we were going to be responsible for this, we'd just go out and buy the cheapest bond, save some money, the cheapest annuity that we can. But because there's AAA language or the quality to be purchased, that that should be evidence that we're not responsible. And that's been the government's argument on all of these cases. Counsel, do you want to save five minutes? I do, yes. Halfway through, so we'll save it for you. Thank you. I will. Ms. Finner. On behalf of the United States, we request that this court affirm the trial court's judgment. If the trial court correctly affirmed it. The judgment may have been right, but the reasoning is problematic, I think. And because it relies so heavily on the word guarantee, first of all, I don't read Massey as relying on the word guarantee. And, indeed, the word guarantee is absent with respect to some of the payments. And I think the guarantee language on the face of it is clearly not talking about a guarantee by the United States. It's talking about a guarantee that these payments will continue for a period of years, even if the individual dies. So I'm not very satisfied with the reasoning of the Court of Federal Appliance, but at the same time, it does seem to me, as we were discussing with opposing counsel, that there is language that is different between the two in the sense that the Massey language talks about being made on behalf of the United States, whereas here it talks about the annuities making the payments. Is that part of the government's argument? Yes. So from the governance perspective, there are a number of ways to distinguish Massey. Principal among them is the fact that the Massey agreement contained the provision that the annuity would make payments, quote, on behalf of the United States, and that phrase, on behalf of the United States, appears twice in the Massey agreement. It does not appear anywhere in, didn't appear in the Nutt agreement that was up before this circuit, didn't appear in the Hendrickson agreement that was here last month, and it doesn't appear in this agreement. The Shaw agreement either. So just on the plain language alone, we have that critical phrase that's missing in this agreement. But in addition, there are other ways to distinguish Massey as well. Do you agree that the guarantee language isn't helpful? That it's not helpful? Yeah. Of course it's not helpful, but it's also irrelevant to this litigation because to the extent the Shaw agreement did use the word guarantee twice, it did so in paragraph 6A and 6B, a guarantee for 20 years to Mr. Shaw and a guarantee for 20 years to Mrs. Shaw. That 20 years had come and gone long before a suit was filed in this suit, in this case. The shortfalls that the Shaws are now seeking for breach of, an alleged breach of the settlement agreement are pursuant to the other paragraphs of the settlement agreement in which there is no use of the word guarantee. Do you agree that the word guarantee doesn't mean guaranteed by the United States in Massey or here either? It means guaranteed that if the person dies, the payments will continue. Yes. And in this case, the Shaw agreement is also very specific in that the prefatory phrase in paragraph 6, before we get to the mentions of guarantee, provides the annuities purchased by the United States shall make the following payments. There is no reference to the United States making payments. In stark contrast, where it was the United States' obligation to pay, as in paragraph 5, that provision is very cleanly stated. So paragraph 5 provides the defendant, United States of America, will make the following payments. That's an active verb. It's a clear requirement of the United States. Following that opening phrase, we have the disbursement of $4.8 million, some in cash at settlement to the parties and their attorneys, and some to purchase the annuities. That's a very clear provision. The United States will make the following payments equal to $4.8 million, which coincidentally is also the limits of the AUSA's actual authority to have settled in 1985. Then comparing that paragraph 5 to paragraph 6, we have in contrast, the annuities purchased by the United States shall make the following payments, and those are those future payments pursuant to the annuity. We also have to read paragraphs 4 and 5, 4, 5, and 6 in the context of the agreement as a whole. So if we move forward then to paragraph 7, we have in exchange for payment of the sum set forth in paragraph 5, that's the $4.8 million disbursed at settlement, not future annuity payments, but the $4.8 dispersed at settlement, and contemporaneous with the delivery of the checks for that $4.8 million, plaintiffs shall file with the clerk of the court a dismissal of this action with prejudice and with costs. Further down in the paragraphs, it then provides explicitly, this compromise settlement is contingent on a total final cost of $4.8 million, which again, coincidentally, is the same as the AUSA's actual authority to have settled in 1985. The United States would submit that there's no basis. I get you all want to make this authority argument, but if we had the Massey language, would that authority argument overcome it? If this clause actually said the annuity shall pay out these sums on behalf of the United States, which is what we found compelling in Massey, does the fact that the authority was only purported to be a certain amount limit us in any way from finding the United States was still obligated under the terms of the agreement to do that? We would submit that it would. The problem with making that comparison in this case, however, is that back in Massey in 1999, Massey was a dispute over the breach of a settlement agreement of a Military Claims Act claim, not a Federal Tort Claims Act claim. So the individual with authority to settle in Massey was the military branch secretary. What authority he did and didn't have at that time is not anywhere in the record. All this court's Massey decision says is that authority was not at issue. So we don't know if- Did we essentially reject this argument in Nutt? Reject which argument in Nutt? The argument about lack of authority and, you know, which strikes me as a very problematic argument. Didn't we reject that in Nutt? No, I don't believe so. Respectfully, Your Honor, when this- How is the argument different from the one we rejected in Part 1 of Nutt? Understood. So in Nutt, our primary defense to liability in all of these cases was the scope of the waiver of sovereign immunity under the Federal Tort Claims Act. And we argued that the Federal Tort Claims Act did not, as a statute, permit the United States government to enter into obligations for the future contingent payment of damages. That argument, which we put forth before this circuit, was rejected by this circuit and is now the law of this circuit. In Nutt, this court held that the Federal Tort Claims Act does not prohibit the United States government from entering into settlement agreements that would involve the future disbursement of damages. But the fact that this court found that, as a general matter, the Federal Tort Claims Act does not prohibit that kind of arrangement says nothing about whether or not, in any one individual case, the parties involved, or the government representative specifically, had the actual authority to do that. That's a separate question. It's a subsidiary question that the Nutt court never had to reach because it rejected our sovereign immunity argument and then ruled on the plain language. But, yes, Nutt held that the Federal Tort Claims Act does not prohibit the United States government from entering into settlement agreements that involve the future disbursement of damages. So the settlement official here, presumably, was it the deputy? Or is it the associate? Whoever would have had unlimited authority could have signed an agreement that said, we'll pay you $4.8 million and under the terms of the settlement agreement, we'll guarantee that these annuity payments covered by the settlement agreements will be paid. Under the, if we look solely at, I want to be careful with my response here, if we look solely at the Federal Tort Claims Act and this court's interpretation of the Federal Tort Claims Act, yes, theoretically, the deputy attorney general or the attorney general, who were the only individuals at that point in time who had settlement authority above $750,000, could have authorized something different than they did. In this instance, they authorized a settlement. We have the cover page that says they authorized $4.8 or whatever it is. We don't know what the actual memo says, because it's all a delivery process, I assume, but whether it talks about the terms of the settlement agreement and the like and about whether this annuity would be guaranteed. Well, we don't know that, but it's also the memo that would have underlied that authority is simply a recommendation to the deputy attorney general or the attorney general. Once the attorney general or the deputy attorney general, what they are authorizing is what they have signed. But if the litigating division sends up a memo and say they send up a draft settlement agreement, which I understand is sometimes now the practice, and that draft settlement agreement had included a provision like Massey on behalf of the United States, and the attorney general had signed the cover page setting forth the amount but didn't say one way or another about the specific terms, what would we do then? Because it's my understanding those cover pages never really specifically go through the specific terms of the settlement agreement. They're usually talking about the numbers, right? That's correct, but a guarantee has a number attached to it. It's a financial obligation. It's not a timing obligation or something that's more qualitative. A financial guarantee is a financial guarantee. There needs to be authority to do that. I, as a trial attorney, cannot... say that a settlement is authorized to purchase an annuity in the amount of X dollars that will guarantee payments of this amount or that will make payments. That it would actually have to put that it will make those payments in the authority memo. Yes, but I would also submit that it needs then a third phrase because we also have to read the Federal Tort Claims Act and settlement authority in the context of other laws. So then we have the Anti-Deficiency Act and other requirements that have to be read together, and the Anti-Deficiency Act precludes the United States government from entering into agreements for open-ended future contingent liability. So if in this hypothetical that you're discussing we have a deputy attorney general, the attorney general say, I authorize settlement for $4.8 million. I also authorize that we will guarantee... But it's not really contingent if we know what the schedule of payments is going to be. Well, it depends on which schedule we're talking about. So in Massey, Massey recognized a guarantee, but the guarantees in Massey were finite amounts. There was a guarantee for 15 years, which one could put a schedule together and say, you know, the starting dollar amount plus the cost of living increase or whatever is the interest rate for 15 years, and we have a sum certain of the maximum guarantee obligation for that, right? We can run that math out. Then we had also in Massey deferred lump payments, three or four on the 22nd anniversary, 25th anniversary, 27th anniversary, in sum certains. So we could put those numbers together, add them all together, and know that if there... Excuse me, what's the difference between Massey in this case and that respect? Well, in this case, what the Shaws are seeking is for the United States government to have an open-ended continuing guarantee obligation for payments that, yes, we can run out how much... For the life of the person, which was the same thing as in Massey. Except that we don't know how long a person will live. Well, we didn't know that in Massey either. Except that in Massey, the guarantee was limited to... The guarantee provisions were for sum certains. No, no, there were specific amounts per month  If... If I were to go to Massey, what we've been calling Massey 1, which is 166 F3D at 1186 to 1186... I'm looking at the Court of Federal Claims opinion in Massey at page 155, where it sets forth the actual agreement. And the actual agreement requires payments for life, just as this one does. But the use of the words guaranteed are very specific, right? So in looking at 155 Fed claims at... Or, sorry, 40 Fed claims at 155, we have paragraph of that Massey settlement agreement, C subparagraph I, providing for the funding of an annuity, and then midway down the paragraph, it says the monthly payments provided for under this paragraph are guaranteed for 15 years. So there's a cap there, right? The guarantee has a cap. No, it's not a cap. It's a floor. It says this should be paid for the remainder of her life, and it's guaranteed for 15 years. I apologize, Your Honor. I think we're talking about two different issues. So I was talking about the... You're right, that it provides for guarantees... Payments for life, but the guarantee provision is for 15 years, which is capped. The guarantee provision is irrelevant. That's not what Massey relied on. You said earlier you agree it's irrelevant. The guarantee provision is just saying the minimum payments under here will be for 15 years. It's not saying anything about the United States' responsibility, right? For future... No, there is no... The guarantee provision is irrelevant. That's not the relevant language of the Massey agreement. We're going back now to the other principal difference between the cases, which was that... You were trying to distinguish between Massey in this case in terms of the contingency, and it seems to me that the contingency is exactly the same. Is the claims court's opinion... Is the settlement agreement ambiguous? No, it is not. We have argued before the trial court, and here, that the agreement is not ambiguous. It's plain and unambiguous in its face, and that it provides, consistent with this court's plainly interpretation of not, that the United States was required to dispense cash at settlement and to purchase annuities at settlement, but not to make or guarantee those future annuity payments. I actually believe that the Shaw agreement is stronger than the Nutt agreement, and that we have, in paragraph 7, a very explicit phrase that this compromise settlement is contingent on a total final cost of $4.8 million, which is about as plain and unambiguous on its face as the government could have hoped for in that regard. If the panel has no further questions. Thank you, counsel. Mr. Gronowski has a little time left, two and a half minutes. Just quickly, regard to the settlement is contingent upon... There is evidence in the record that you'll see that shows that the purpose for the contingency was, and the final amount not to exceed, was because there would be a lap between the settlement agreement and the purchase of the annuity. And annuity prices fluctuate literally on a daily basis. And it was to allow the government an escape if they had gotten a quote, obviously, for this annuity. How much was actually paid under this agreement? At the time of the settlement? No. Over the years? Over the years. A lot of money. More than $4.8 million? Oh, definitely, definitely. And in fact, if Scotty Shaw were to die today, there's about $4.8 million in the medical trust fund that has not been utilized, and that would revert to the government. So if Scotty were to die today, the government would have never paid anything for this. Who's Scotty? Scotty is the young child who's now 39 years of age on July the 4th of this year who is profoundly disabled. Richard Scott Shaw. I'm sorry. I've lived this case since. I tried it with my partner, so I've lived it since he was born. But we call him Scotty. So that was just a contingency to do that. And the court is right. Massey did not rely on the guarantee language at all. The plaintiffs had argued that, and the court mentioned that in its decision, but the court also hung its hat, even though the language about on behalf of is in there. They say the language specifying that the annuity will result in distributions and that the disbursements quote shall be paid is unambiguously mandatory. They don't couch the fact that it was the language on behalf of. And then I would also say, if there's any question about Massey 1, Massey 2 reiterated exactly what Massey 1 said, and I think it's very pertinent and it will be my close. They said that the purpose of the original settlement agreement was to guarantee the payment of a specified amount of money to provide for Autumn Massey. It was not reasonable for the government to argue as it did that its obligations ended with the purchase of an annuity from a private entity. While the trial court thought the agreement  the law of this case is that the terms of the settlement imposed an unambiguously mandatory duty on the government to argue to the contrary was not reasonable when the result would be to deprive the injured child of the benefits the government agreed she needed and for which it was responsible. And I think when we look at that and you look at the policies that are illuminated that we have brought out, that the government is there and the purpose of these structured settlements are encouraged and they are to ensure, they use the word ensure, that the payments that are necessary for the care of this child will be made. Before you sit down, just one question. I think you mentioned that there were four cases. How many cases have not been resolved? There was Hendricks, which was argued last month. I have that, yes. There is Stathis, a case called Stathis v. U.S. Where is that? That's 14. These are all the court of claims level. Not resolved by the court of claims. Let's see. I can answer. Some have some decisions, but some are still in the trial process. But there's Stathis, Landclose, Landcamp, and Fell. Counsel, please. Yes, Stathis, Landcamp, and Fell are all still pending with various judges. And Hendricks was argued here. Hendrickson was argued here a while back. And Landclose, there was a decision by the court in Landclose. Our court? Court of claims. Yes. Thank you, counsel. We'll take the case off the bench. Thank you all very much.